United States District Court
District Of Maine

Angela S. Johnson,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Docket No.
                                      )
Molina Information Systems, LLC       )
d/b/a Molina Medicaid Solutions,      )
and Molina Healthcare, Inc.           )
                                      )
        Defendant.                    )

## Complaint and Demand For Jury Trial and
## Injunctive Relief Sought

### Summary of the Action

1.    Ms. Johnson worked for Unisys for over eight years and then for its

successor, Molina Information Systems, LLC, a wholly-owned subsidiary of

Molina Healthcare, Inc., for another four years. In 2012, she received a

promotion to Manager of Operations and a five percent raise, and in early

2013, she received an additional merit-based ten percent raise. All of her

written annual and quarterly performance evaluations, including her August

2014 evaluation, were positive.

2.    On October 10, 2014, Molina abruptly terminated Ms. Johnson less

than one week after she suffered a flare-up of her Meniere's disease and

requested medical leave and reasonable accommodations of temporarily working from home and taking leave. Departing from its standard progressive discipline practice, Molina did not give Ms. Johnson any warnings or other progressive discipline before her sudden termination.

3.    As a result of Defendants' intentional discrimination, denial of reasonable accommodations, retaliation, and interference with Ms. Johnson's right to protected leave, Ms. Johnson is seeking all available remedies, including back pay and benefits, compensatory damages, punitive damages, reinstatement or front pay in lieu of reinstatement, liquidated damages, declaratory relief, and attorneys' fees and expenses.

## Parties

4.    Plaintiff, Angela S. Johnson, is a citizen of the United States and is a resident of Augusta, County of Kennebec, Maine.

5.    Defendant Molina Information Systems, LLC, d/b/a Molina Medicaid Solutions, is a corporation doing business in Maine and organized under the laws of the State of California. Molina Information Systems, LLC provides design, development, implementation, and business process outsourcing solutions to state governments for their Medicaid Management Information Systems as a state's contracted fiscal agent.

6.    Defendant Molina Information Systems, LLC, is a wholly-owned subsidiary of Defendant Molina Healthcare, Inc.

7.     Defendant Molina Healthcare, Inc., is a corporation doing business in Maine and organized under the laws of the State of California. Molina Healthcare, Inc. is a FORTUNE 500 multi-state health care organization that arranges for the delivery of health care services and offers health information management solutions to nearly five million individuals and families who receive their care through Medicaid, Medicare and other government-funded programs in fifteen states.

## Jury Trial Demand

8.     Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable by a jury.

## Jurisdiction and Venue

9.     This action arises under the Americans with Disabilities Act, as amended, 42 U.S.C §§ 12101 *et seq.*; the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq.*; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 794; the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; the Maine Family Medical Leave Requirements law, 26 M.R.S. § 844; and Maine's personnel file law, 26 M.R.S. §§630-631. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction over Plaintiff's state law-based claims.

10.    Venue is proper in the District of Maine under 28 U.S.C. § 1391(a).
Under Rule 3(b) of the Rules of this Court, this action is properly filed in
Bangor because Plaintiff's employment was based out of the town of Augusta
in Kennebec County.

## Administrative Procedure

11.    On June 23, 2015, Ms. Johnson filed a complaint for disability
discrimination, retaliation in employment, and denial of reasonable
accommodation against Molina with the Maine Human Rights Commission
(MHRC) and Equal Employment Opportunity Commission (EEOC).

12.    The MHRC unanimously determined that there were reasonable
grounds to believe that Molina discriminated against Ms. Johnson on the
basis of her disability and unlawfully retaliated against her based on her
reasonable accommodation requests when it terminated her employment on
October 10, 2014. The MHRC determined that there were no reasonable
grounds to believe that Molina denied Ms. Johnson a reasonable
accommodation.

13.    On October 16, 2017, the Equal Employment Opportunity
Commission issued a Notice of a Right to Sue to Ms. Johnson.

14.    On November 14, 2017, the Maine Human Rights Commission issued
a failure-of-conciliation letter to Ms. Johnson.

15.   Under 5 M.R.S.A. §4622, Ms. Johnson has satisfied one or more of the prerequisites to be awarded attorney fees and all available damages under the Maine Human Rights Act.

16.   Ms. Johnson has exhausted all administrative remedies for all claims in this action that require administrative exhaustion.

17.   While Ms. Johnson's claims were pending at the Maine Human Rights Commission, the parties entered into a tolling agreement to toll the statute of limitations for filing Ms. Johnson's federal FMLA claim in court. Following the Maine Human Rights Commission's decision on Ms. Johnson's claims, the parties entered into a tolling agreement to toll the statutes of limitations for filing all of Ms. Johnson's claims against Molina.

Factual Allegations

18.   Molina Healthcare, Inc. and Molina Information Systems, LLC, functioned as a single and/or joint employer of Ms. Johnson throughout her employment.

19.   Molina Healthcare, Inc. and Molina Information Systems, LLC have closely interrelated operations and hold themselves out to the public as a single entity.

20.   Molina Healthcare, Inc. and Molina Information Systems, LLC share the same corporate headquarters in Long Beach, California.

21.    Molina Healthcare, Inc. and Molina Information Systems, LLC share the same website, molinahealthcare.com.

22.    Molina Healthcare, Inc. and Molina Information Systems, LLC have common ownership and management.

23.    All Molina Healthcare, Inc. employees, regardless of whether they work for Molina Information Systems, LLC or another division of Molina Healthcare, Inc., report up to the same senior leaders based at the company's corporate headquarters in Long Beach, California.

24.    Molina Healthcare, Inc., exercised significant authority over Ms. Johnson's working conditions and job duties, including her job description, employment rank, and associated pay rates and benefits.

25.    Molina Healthcare, Inc. has a single company-wide intranet system, which makes the following information available to all employees regardless of whether they work for Molina Information Systems, LLC, or another division of Molina Healthcare, Inc: (a) information on company-wide policies and practices, such as the employee handbook; (b) announcements, stories, and photos or achievements from other Molina locations, and (c) tools for managers, including an employee toolkit with the progressive disciplinary forms and instructions.

26.    Ms. Johnson's email signature block identified her as a "Molina Healthcare" Operations Manager and her email address included

6

"molinahealthcare," as did the email addresses of all employees company-wide.

27.    As of 2012/2013, all new Molina Healthcare, Inc. employees are required to attend a single new employee orientation at the company's Long Beach, California, headquarters to get training on company-wide policies, regardless of whether they work for Molina Information Systems, LLC, or another division of Molina Healthcare, Inc.

28.    Molina Healthcare, Inc. participated in the decision whether to grant Ms. Johnson reasonable accommodations for her disability and whether to terminate her employment.[1]

29.    Ms. Johnson began working for Unisys Corporation beginning in 2002.

30.    In February 2010, Molina purchased the Unisys Corporation where Ms. Johnson worked.

31.    At all relevant times during Ms. Johnson's employment, including in the 2014 and 2015, Molina received federal financial assistance. Molina's receipt of federal financial assistance makes it subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

---

[1] Unless otherwise specified, Molina Healthcare, Inc., and Molina Information Systems, LLC, are collectively referred to herein as "Molina" or "Defendants."

32. Molina Information Systems, LLC had over 500 employees in 20 or more calendar weeks in the calendar year of or the calendar year preceding Ms. Johnson's termination, 2014 and 2015.

33. Molina Healthcare, Inc., had over 500 employees in 20 or more calendar weeks in the calendar year of or the calendar year preceding Ms. Johnson's termination, 2014 and 2015.

34. In 2012, Ms. Johnson received a promotion to Manager of Operations in Molina's Augusta, Maine location, overseeing the call center and provider enrollment.

35. Ms. Johnson received a five percent raise with her promotion.

36. Ms. Johnson performed the duties of her job as an Operations Manager well.

37. In early 2013, Ms. Johnson received an additional merit-based ten percent raise.

38. All of Ms. Johnson's written annual and quarterly performance evaluations, including her most recent 2014 evaluation, were positive.

39. Ms. Johnson's "Q1 2014" quarterly evaluation, filled out by Supervisor Peter Gray and given to Ms. Johnson in or around August 2014, rated Ms. Johnson positively in all areas.

40. The August 2014 quarterly evaluation from Mr. Gray indicated that Ms. Johnson "generally communicated clearly and collaborated well,"

8

"applied effective judgment," was "knowledgeable in his/her functional area," "met expectations in achieving goals," and "made progress toward achieving his/her developmental plans."

41.   On or about October 4, 2014, Ms. Johnson had a flare-up of her Meniere's disease, consisting of severe seizure-like vertigo episodes.

42.   As of October 2014, Ms. Johnson's Meniere's disease had been largely asymptomatic for the past decade.

43.   Ms. Johnson's Meniere's disease symptoms include hearing loss (tinnitus), an unbalanced gait and, during a flare-up, severe seizure-like vertigo episodes.

44.   On the morning of October 6, 2014, Ms. Johnson emailed Brex-Anna Bernstein, Molina's leave administrator, with information about the history and recent flare-up of her Meniere's disease.

45.   Ms. Johnson explained to Ms. Bernstein that she would need some time off to see her doctor and get her symptoms under control, and requested paperwork from Ms. Bernstein for FMLA and short-term disability leave.

46.   That same day, Ms. Johnson also advised her immediate supervisor, Peter Gray, that she was experiencing severe vertigo symptoms, had a scheduled appointment with her primary care provider in the morning, and therefore would not be at work that day due to her health issues.

47.    On the morning of October 7, 2014, Ms. Johnson saw her primary care provider, Monica J. White, PA-C, who prescribed additional medication and advised that the vertigo episodes could be the beginning of a flare-up in her Meniere's disease.

48.    Ms. Johnson's provider also filled out the FMLA certification paperwork requesting intermittent FMLA leave for Ms. Johnson's incapacitating Meniere's episodes, for an estimated one hour at a time, three times per week for the intermittent episodes.

49.    The FMLA certification paperwork restricted Ms. Johnson to "work[ing] from home until current flare resolved."

50.    Ms. Johnson sent the completed FMLA paperwork to Ms. Bernstein on October 7, 2014.

51.    On October 8, Ms. Bernstein advised Ms. Johnson that her request for intermittent FMLA leave of three hours per week was approved, but that she needed to correspond with human resources about her reasonable accommodation request to work from home.

52.    Molina has permitted other senior leaders and managers in positions comparable to Ms. Johnson's, including Terrance Southward (Operations Manager), Tina Dubois (Operations Manager), and Jessica Moretti (Operations Manager –Finance), to work from home for days or weeks at a time.

53.   On October 8, 2014, Ms. Johnson emailed both Ms. Bernstein and Augusta-based human resources representative Jonathan Jensen with detailed information about her Meniere's disease and her physician's restriction that she work from home until her Meniere's flare-up resolved.

54.   Ms. Johnson's October 8 emails to Ms. Bernstein and Mr. Jensen made clear that her reasonable accommodation request to work from home was not indefinite, stating: "I would hope the site will choose to accommodate this medical restriction for me at this time, for a period of time, not forever. I am trying to get past the recurrence of episodes to have this all behind me."

55.   Ms. Johnson emphasized in her October 8 emails to Ms. Bernstein and Mr. Jensen that she was medically restricted to working from home and this was not simply a request based on convenience.

56.   Ms. Bernstein suggested that working from home might not be reasonable given Ms. Johnson's position as a "people manager," and Ms. Johnson advised Ms. Bernstein that "We have several people man[a]gers who work remotely on differing schedules; with far more direct reports than I (and no medical restrictions)."

57.   Ms. Bernstein asked Ms. Johnson to return completed disability accommodation request and authorization forms within two weeks, by October 22, 2014.

58.   On October 8, 2014, Mr. Jensen advised Ms. Johnson by email that he would "work with . . . HR Corporate" to "entertain your request to work from home via ADA."

59.   Mr. Jensen further stated to Ms. Johnson that "I would think that to start with a DR'S note outlining the restriction for you to remain at home or something to that effect would be a good start. Thanks for your patience as I muddle through this."

60.   Ms. Johnson was able to perform the essential functions of her job with reasonable accommodation.

61.   Ms. Johnson's request to work from home was sufficiently direct and specific so as to put Molina on notice of her need for an accommodation.

62.   Ms. Johnson held a good faith and objectively reasonable belief that her request for an accommodation had merit.

63.   Less than twenty-four hours later, on October 9, 2014, Molina denied Ms. Johnson's reasonable accommodation request of working from home.

64.   Molina denied Ms. Johnson's reasonable accommodation request before even receiving the completed disability accommodation paperwork, which Ms. Bernstein had just given to Ms. Johnson the day before.

65.   The denial of Ms. Johnson's reasonable accommodation request of working from home, in the form of an email from Mr. Jensen, stated:

12

> After a careful review of your request, it has been determined that
> [Molina Healthcare] is unable to approve your accommodation request
> to work from home. Due to the needs of the client, current projects, and
> your level of responsibility, we are unable to accommodate this request.
> You are expected to return to the office tomorrow, October 10, 2014 at
> 8am EST. This denial completes the processing of your request for
> reasonable accommodation.

66.   Surprised by the sudden denial of her accommodation request, on

October 9 Ms. Johnson asked Mr. Jensen what information was considered in

making the decision, and pointed out that Molina regularly permitted other

comparable senior leaders and managers without medical restrictions to work

from home, and requested that Mr. Jensen provide her with Molina's work-

from-home policy.

67.   Mr. Jensen never replied to Ms. Johnson's request for a copy of

Molina's work-from-home policy.

68.   On October 9, Ms. Johnson explained to Ms. Bernstein that the

denial of her accommodation request seemed "premature," particularly

because Molina had not yet received the supporting disability accommodation

paperwork from her physician, which was not due until October 22.

69.   Ms. Bernstein simply responded that Ms. Johnson was required to

work with Mr. Jensen on her accommodation request.

70.   Later in the day on October 9, Ms. Johnson suffered yet another

Meniere's episode.

71.   Ms. Johnson informed Ms. Bernstein of the additional episode of Meniere's and that she would be unable to come to work the following day, and asked for Ms. Bernstein's guidance in obtaining additional leave.

72.   Ms. Bernstein responded that if Ms. Johnson needed full (rather than intermittent) FMLA leave she would need to fill out additional FMLA paperwork.

73.   Ms. Johnson's request for leave was sufficiently direct and specific so as to put Molina on notice of her need for an accommodation.

74.   Ms. Johnson held a good faith and objectively reasonable belief that her request for an accommodation had merit.

75.   Later on October 9, Ms. Bernstein sent Ms. Johnson additional FMLA paperwork to be filled out by her physician to support her request for continuous FMLA leave.

76.   On the morning of October 10, Ms. Johnson's immediate supervisor, Peter Gray, directed her to call his office that day at 11:30 a.m.

77.   When Ms. Johnson called Mr. Gray's office at the appointed time, she was placed on a conference call with Mr. Gray, Mr. Jensen, regional district manager Del Bell, the regional district manager, and regional human resources representative Krishna Powell.

78.   Mr. Bell informed Ms. Johnson that effective immediately her employment was terminated "for cause."

14

79.    Ms. Johnson asked what the "cause" for her termination was and Mr. Bell merely responded that it was "not related at all" to her request for medical accommodations but gave no further explanation.

80.    When Ms. Johnson asked again what why she was being fired, Mr. Jensen said he did not have that information.

81.    Ms. Powell merely stated that the cause was for not meeting performance expectations.

82.    Although Molina had a standard practice of administering progressive discipline to address performance issues for all Molina employees, as instructed by the Managers' toolkit on the company-wide intranet, Molina did not follow that practice to address Ms. Johnson's purported "performance" issues.

83.    During the October 10 phone call, Ms. Johnson said to Ms. Powell that Molina had a standard practice of using progressive discipline to address performance issues and asked Ms. Powell why progressive discipline had not been used with her as it had been with everyone else.

84.    Ms. Powell said she heard what Ms. Johnson was saying about the departure from the standard progressive discipline practice, but said that management had made its decision and the decision was final.

85.    Other senior leaders in positions comparable to Ms. Johnson's, including Jessica Moretti (Operations Manager – Finance) and Anita Mosley

(Systems Operations Manager), received verbal and written warnings under Molina's standard progressive discipline policy and practice.

86.   After the October 10 termination phone call, Ms. Johnson wrote Mr. Jensen to ask for an explanation of the reason for her termination. He responded that she was an "at-will" employee and he did not have to give her a reason for the termination.

87.   In early October 2015, Ms. Johnson requested her personnel file from Mr. Jensen and was provided with a packet of documents.

88.   After her termination, Ms. Johnson inquired about documents she believed were missing from the personnel file she had been given, and Mr. Jensen responded on November 6, 2014 with two additional documents and stated that neither he nor "corporate" had "any additional records concerning your employment with Molina."

89.   On January 7, 2015, Ms. Johnson, through counsel, requested her complete personnel file under 26 M.R.S. §631, including "[a]ll documents concerning the decision to terminate Ms. Johnson's employment on October 10, 2014," and further requested "the written reasons for the termination of Ms. Johnson's employment" under 26 M.R.S. §630.

90.   Molina produced a personnel file of nearly 100 Bates-stamped pages.

91.   On October 27, 2015, after Ms. Johnson filed her Maine Human Rights Commission complaint for disability discrimination and over ten

16

months after Ms. Johnson's counsel requested her complete personnel file and reasons for termination, Molina produced a memo purportedly written by Peter Gray on September 2, 2014, recommending Ms. Johnson's termination.

92.   The purported September 2, 2014 memo had not been shared with Ms. Johnson previously, had not been produced in response to Ms. Johnson's requests for her official personnel file and reasons for her termination, and had not been produced in response to counsel's January 7, 2015 request for her personnel file and reasons for her termination.

93.   After the termination, Molina claimed that they did not fire Ms. Johnson until October 10, more than a month after the purported September 2 memo, because they were unable to schedule an in-person meeting with Ms. Johnson during that period; however, Ms. Johnson was in the office throughout that period and in any event Molina ultimately fired Ms. Johnson by phone.

94.   Molina failed to timely produce Ms. Johnson's personnel file and written statement of the reasons for her termination.

95.   Molina failed to act in good faith and failed to engage in the interactive process of determining whether Ms. Johnson's Meniere's disease could be reasonably accommodated.

96.   Molina acted with malice and reckless disregard for Ms. Johnson's rights protected under the Maine Human Rights Act, the American with

17

Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Family

Medical Leave Act, and the Maine Family Medical Leave Requirements law.

97.   Ms. Johnson was discriminated against because of her disability,

denied reasonable accommodations for her disability, and retaliated against

for requesting reasonable accommodations for her disability and for

requesting and taking medical leave protected by law.

## Legal Claims

### I.   Disability Discrimination, Denial of Reasonable Accommodations, Retaliation, and Intentional and Willful Interference of Employee's Rights and Retaliation For Requesting Medical Leave

98.   The allegations in paragraphs 1-97 are realleged.

99.   Defendants have intentionally discriminated against Ms. Johnson

because of her disability, and retaliated and discriminated against her for

requesting a reasonable accommodation for her disability, in violation of the

Maine Human Rights Act, 5 M.R.S. §§4551-4634, the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, section 504 of the Rehabilitation

Act of 1973, as amended, 29 U.S.C. § 794, and intentionally and willfully

interfered with her  rights and retaliated against her for exercising her rights

to request and use leave protected by the Family Medical Leave Act, 29

U.S.C. § 2601 *et seq.*, and the Maine Family Medical Leave Requirements

law, 26 M.R.S. § 844.

18

100.  Ms. Johnson is pursuing all possible methods of proving this discrimination and retaliation, including but not limited to, circumstantial and direct evidence, pretext evidence, as well as causation based on a single unlawful motive and mixed motives, including an unlawful motive.

101.  As a direct and proximate result of Defendants' intentional discrimination, denial of reasonable accommodation, retaliation, and intentional and willful interference with Plaintiff's rights to protected medical leave and reasonable accommodations, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, back pay and benefits, loss of self-confidence and self-respect, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, loss of enjoyment of her job and of her life, injury to reputation, and other pecuniary and non-pecuniary losses. Wherefore, Plaintiff requests relief against Defendants as follows:

(a)   Enter declaratory relief that Defendants violated Plaintiff's statutory civil rights to be free of disability discrimination, unlawful retaliation, and free to request and use protected medical leave;

(b)   Enter injunctive relief ordering Defendants to:

- provide effective civil rights training for all human resources employees and all supervisors on the requirements of all applicable laws prohibiting employment discrimination because

of disability and complete this training within 60 days of the entry of Judgment for Injunctive Relief;

- provide this training for two years after the date judgment is entered to all new human resources  and supervisory employees within 60 days of their starting the position;

- maintain attendance sheets identifying each person who attended each training session and forward a copy of the attendance sheets to Plaintiff's counsel within seven days of each training session;

- post at each of its worksites a copy of a remedial notice detailing the judgment in this case as well as the order providing injunctive relief;

- send a letter printed on Defendants' letterhead to all of Defendants' employees advising them of the judgment in this case, enclosing a copy of their policies regarding reasonable accommodations and prohibiting disability discrimination, and stating that they will not tolerate any such discrimination or denial of reasonable accommodations, and will take appropriate disciplinary action against any employee or agent of Defendants who engage in such discrimination;

(c)     Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon and reinstatement to her Operations Manager position, or, in lieu thereof, front pay for future lost wages and benefits;

(d)     Award compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(e)     Award punitive damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(f)     Award Plaintiff  full costs and reasonable attorney's fees; and

(g)     Award such further relief as is deemed appropriate.

## II.     Failure to Provide Personnel File and Written Statement of Reasons for Termination (26 M.R.S. §§630, 631)

102.  The allegations in paragraphs 1-101 are realleged.

103.  By virtue of the foregoing, Molina unlawfully and without good cause failed to provide Ms. Johnson with a complete copy of her personnel file within 10 days of her written request, in violation of 26 M.R.S. §631, "Employee right to review personnel file."

104.   By virtue of the foregoing, Molina unlawfully failed to provide Ms. Johnson with a written statement of the reasons for her termination 15 days of her written request, in violation of 26 M.R.S. §630, "Written statement of reason for termination of employment." Wherefore, Plaintiff requests relief against Defendant as follows:

21

(a) Enter declaratory relief that Molina unlawfully failed to timely provide Ms. Johnson with a complete copy of her personnel file and reasons for termination, in violation of 26 M.R.S. §§630-631;

(b) Award Plaintiff the maximum statutory compensation of $500;

(c) Award Plaintiff the costs of suit, including her reasonable attorney's fees;

(d) Award such further equitable relief as is deemed appropriate.


Date:  February 7, 2018                    Respectfully submitted,


                                           /s/ Carol J. Garvan
                                           _____
                                           Carol J. Garvan, Esq.
                                           Johnson, Webbert & Young, LLP
                                           160 Capitol Street, P.O. Box 79
                                           Augusta, Maine 04332-0079
                                           (207) 623-5110
                                           E-Mail: cgarvan@work.law


                                           /s/ Valerie Z. Wicks
                                           _____
                                           Valerie Z. Wicks, Esq.
                                           Johnson, Webbert & Young, LLP
                                           160 Capitol Street, P.O. Box 79
                                           Augusta, Maine 04332-0079
                                           (207) 623-5110
                                           E-Mail: vwicks@work.law

                                           *Attorneys for Plaintiff*

22